IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Jesse Andrade, as Personal Representative of the ESTATE OF NICOLAS MORALES, <br>     Plaintiff, <br><br> v. <br><br> COLLIER COUNTY SHERIFF KEVIN RAMBOSK et al. <br>     Defendants. | Case No. 22-cv-482 <br><br> Hon. John L. Badalamenti <br> Magistrate Judge Kyle C. Dudek |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff, through counsel, responds in opposition to the motion to dismiss filed by Defendant Collier County ("Defendant" or "County"), ECF No. 50. The Defendant's motion is unfounded and should be denied.

## BACKGROUND

Plaintiff filed this civil rights suit for damages on August 10, 2022. ECF. No. 1. He named as defendants Collier County Sheriff Kevin Rambosk in his official capacity on behalf of Collier County, and Collier County Sheriff's Officers Pierre Jean, Nathan Kirk, and Brian Tarazona in their individual capacities. *See id.* On September 7, 2022, Defendants filed a motion to dismiss, ECF No. 22, and Plaintiff responded in opposition on September 28, 2022. ECF No. 25. Plaintiff incorporates herein the facts as set forth in Plaintiff's response. *Id.* at 1—9.

As they prepared the Uniform Case Management Report, the parties disagreed as to whether Collier County was properly served and notified through

Plaintiff's initial complaint against Sheriff Rambosk in his official capacity. *See* ECF No. 30 at 4–5. Plaintiff, citing settled law in the Eleventh Circuit, asserted his position that a suit against a sheriff in his official capacity is a suit against the county and that service upon a sheriff provides proper notice to the county. *Id.*

The Parties appeared for a preliminary pretrial conference on October 31, 2022, before Magistrate Judge Dudek. In response to Plaintiff's argument as to the service on Collier County, Defendants asserted that naming the Sheriff in his official capacity does not bring the County into the suit, adding that the proper *Monell* defendant is unclear. *See* ECF No. 54 at 6–8. Judge Dudek stated he was not certain that the County had been brought into the suit and advised Plaintiff of the risks that lie ahead if the proper parties are not sued:

> I want to be cautious of any issue about that later on if we're going to get a little further down this case and it's going to come up that the county is not, in fact, in it, then we're really going to have a problem if we're close to summary judgment or somewhere further down the line and it becomes apparent that we don't have right defendants, then we can be in much more trouble than we are now.

*Id.* at 9–10. The Court then granted Plaintiff leave to amend to add Collier County as a defendant. *Id;* ECF. No. 41. Heeding the Court's warning about ensuring proper notice to the County to effectuate the necessary relief, Plaintiff filed an amended complaint on November 30, 2022, adding Collier County to Count III (*Monell* Claim under 42 U.S.C. § 1983 for Customs of Excessive Force and Failed Accountability, and for Failure to Screen Defendant Jean), Count V (Wrongful Death Act Claim under Fla. Stat. Ann. § 768.16 *et seq.*), Count VII (Battery under

Fla. Stat. Ann. § 46.021), and Count IX (Negligence under Fla. Stat. Ann. § 46.021). ECF No. 42 ("Am. Compl."). Plaintiff also added an indemnification claim against Collier County under Fla. Stat. Ann. § 111.071 in Count X. *See id.* The Court thereafter denied the Defendants' initial motion to dismiss (ECF No. 22) as moot. ECF No. 46.

Defendant Collier County filed a motion to dismiss on December 22, 2022, arguing that it is not a proper party to the suit. ECF No. 50 (hereinafter "Mot."). That same day, the other Defendants—Sheriff Rambosk and the individual officers—filed an answer to the Amended Complaint. ECF No. 51.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claim must be "plausible on its face," so the allegations "raise a reasonable expectation that discovery will reveal evidence" of the constitutional and statutory violations alleged. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556, 570 (2007). On a motion to dismiss for failure to state a claim, "all facts alleged in the complaint" are accepted as true, and all reasonable inferences drawn in favor of the nonmovant. *Santamorena v. Georgia Military Coll.*, 147 F.3d 1337, 1340 (11th Cir. 1998).

## ARGUMENT

### I. COLLIER COUNTY IS VICARIOUSLY LIABLE FOR THE TORTS COMMITTED BY THE SHERIFF AND HIS DEPUTIES.

There is no question that the Sheriff is vicariously liable for the state law torts as alleged in the Amended Complaint. Defendant admits as much. Mot. at 6.

3

It is similarly beyond debate that the County is also on the hook here, as a matter of Florida law.

A political subdivision, including a county, is liable for the acts or omissions of its *officers*, employees, or agents. Fla. Stat. Ann. § 768.28(2), (9)(a).[1] The Sheriff is defined in the Florida Constitution as a "county officer" and recognized as an "integral part of the county" by the Florida Supreme Court. *Beard v. Hambrick*, 396 So. 2d 708, 711 (Fla. 1981). The County is therefore liable for the actions of Sheriff Rambosk and his deputies, even if they were not employees of the County "in the traditional sense." *See* Mot. at 6.

As further evidence of this point, the County will, for practical purposes, be the one paying any judgment rendered here. Under Florida law, sheriffs are county officers elected by the residents of the county with jurisdiction coextensive with county boundaries. Fla. Const. Art. VIII, Sec. 1(d) ("County Officers: There shall be elected by the electors of each county, for terms of four years, a sheriff . . ."); Fla. Stat. Ann. § 30.15 (listing the responsibilities of sheriffs "in their respective counties."). The Sheriff's budget is set by the Board of County Commissioners and

---

[1] Subsection (2) of the § 768.28 defines "state agencies or subdivisions" to include counties and municipalities. Subsection (9)(a) states that a tort claim, in the absence of bad faith, can only proceed against the government entity—not the tortfeasor:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

funded by the Collier County taxpayers. *See* Fla. Stat. Ann. § 30.49; *see also Jenne v. Maranto*, 825 So. 2d 409, 416 (Fla. Dist. Ct. App. 2002) (The Sheriff's "budget is made up by the County from taxes levied only within the County."). The Defendant concedes this point. Mot. at 8 (" . . . the Sheriff's budget and salaries are funded by the County. Fla. Stat. Ann §§ 30.48 & 30.49."). The Sheriff is then authorized to purchase liability insurance for claims against him or his deputies arising out of the performance of their duties. Fla. Stat. Ann. § 30.555. Accordingly, it is the County who will pay for any judgment in this case, either directly by its own funds or indirectly through insurance purchased by the Sheriff with county funds. *See Jenne*, 825 So. 2d at 416 (analyzing Florida law and concluding the Sheriff is an official of local government and thus "any money judgment in [the] case will be paid from the local county budget or by insurance purchased therefrom by the Sheriff.").

Defendant tries to immunize the County from liability by arguing that the Sheriff is *the* only proper party to sue for the wrongdoing of the deputies, relying upon *Erickson v. Hunter*, No. 95-387-CIV-FTM-17D, 1996 WL 427769, at *1 (M.D. Fla. 1996). Mot. at 5–6. The issue in *Erickson*, however, was limited to whether Collier County Sheriff's Office (CCSO)—not the County—was a proper party in a discrimination suit. *See id.* The court concluded that the CCSO was not a legal entity capable of being sued and dismissed the Sheriff's Office from the suit. *Id. Erickson*'s reasoning in fact directly supports Plaintiff's position that Collier County can be held vicariously liable for the acts and omissions of the Sheriff's

5

deputies because, unlike the Sheriff's Office, the County *is* a suable entity under Florida law. *See, e.g.*, Fla. Stat. Ann. § 768.28 (waiving sovereign immunity for tort liability against the state and its political subdivision, including "counties and municipalities"). In fact, the *Erickson* court denied Collier County's motion to dismiss in a separate order, finding that a sufficient nexus existed between Collier County and the Sheriff so as to hold the County responsible for wrongdoing by the Sheriff. *Erickson v. Hunter*, 932 F. Supp. 1380, 1384 (M.D. Fla. 1996).

The County also tries to distance itself from this case by citing several labor and employment cases that hold sheriff's deputies to be appointees subject to the absolute control of the Sheriff alone, in terms of their promotion and retention. *See* Mot. at 8. The Florida Supreme Court has roundly rejected such an absolutist view. *Ison v. Zimmerman*, 372 So. 2d 431, 435 (Fla. 1979) (declining to "approve judicially such a sweeping view of the sheriff's duties to retain his deputies" because it contradicts the spirit of Art. III § 14 of the Florida Constitution as well as the Florida statute governing sheriffs, § 30.53). And in any event, the Defendant's line of labor cases, centering upon whether deputy sheriffs have a due process interest in their positions, has no relevance to the County's vicarious liability for the wrongful acts of the Sheriff and his deputies committed in the course of performing their law enforcement duties.

In further support of its claim of total independence for the Sheriff, the County also quotes at length from *Demings v. Orange Cnty. Citizens Review Bd.*, 15 So. 3d 604 (Fla. 5th DCA 2009). Mot. at 9–10. But it omits a crucial part of the

6

opinion which puts the court's language in perspective and undercuts the Defendant's argument. *Demings* concerned the constitutionality of a county ordinance that established an independent citizen's review board to investigate citizen complaints against the sheriff's office. *See Demings*, 15 So. 3d at 606–07. The court held that the ordinance violated a statute that made law enforcement agencies the exclusive entities responsible for investigating citizen complaints. *See id.* at 609-10. In the passage quoted by the County, the court concluded that the ordinance was infirm under the Florida constitution because "the County cannot interfere with the Sheriff's independent exercise of his duty to investigate misconduct by his deputies *either by forcing him to appoint members to the CRB or by mandating his participation in CRB proceedings, either in person or through his deputies or employees*." *Id.* at 611 (italicized portion was omitted from the Defendant's motion). The *Demings* court was concerned with the narrow question of whether the County could compel the sheriff to participate in the proceedings held by the citizen's review board it had created. It did not opine on the liability of the County for the wrongful acts of the sheriff or his deputies.

      Finally, the County argues that holding it liable for the Sheriff's wrongful acts or omissions is "illogical" because it would mean that the County would be liable for torts committed by employees or officers of all its Constitutional offices. Mot. at 11. The County points to no legal authority that forbids such an outcome nor is there anything illogical about it—that simply is the longstanding principle of vicarious liability. *See Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So.

7

2d 459, 467–68 (Fla. 2005) ("Vicarious liability is often justified on the policy grounds that it ensures that a financially responsible party will cover damages . . . . The vicariously liable party has not breached any duty to the plaintiff; its liability is based solely on the legal imputation of responsibility for another party's tortious acts.") (cleaned up).

Florida law makes a municipality liable for the wrongful acts of its officers, declares the Sheriff to be a county officer, and ensures that the County will pay a judgment issued against the Sheriff and his deputies. Collier County is liable here, and thus, state law counts V, VII, and IX against the County should not be dismissed.

## II.   COLLIER COUNTY IS A PROPER PARTY UNDER § 1983.

A county government may be sued under 42 U.S.C. § 1983 when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," was the moving force behind a constitutional violation. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent . . ."). When it comes to law enforcement functions, the sheriff's acts represent official policy for which the county may be held liable under § 1983. *Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987).

Plaintiff brought *Monell* claims under § 1983 against Defendants Collier County and Sheriff Rambosk, in his official capacity, alleging customs of excessive

8

force and failed accountability, and failure to screen Defendant Jean. Am. Compl. ¶¶ 250–69. As Sheriff Rambosk is the final policymaker for the law enforcement arm of Collier County, his acts constitute official acts for purposes of *Monell* liability. *Adcock v. Baca*, 157 Fed. App'x. 118, 119 (11th Cir. 2005) ("When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents"); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (same). In other words, as here, where the Sheriff in his official capacity can be held liable under § 1983, so too can the County.

The County does not dispute that Sheriff Rambosk is the final policymaker with respect to CCSO's law enforcement activities and the retention and promotion of CCSO officers. Mot. at 14. Rather, it argues—against Eleventh Circuit precedent—that the Sheriff is not a county policymaker. Mot. at 15–17. The County's attempt to muddy the waters of established precedent should be rejected.

The question of municipal liability for constitutional violations by Florida law enforcement has long been settled in the Eleventh Circuit. *See Hernandez v. Tregea*, No. 207-CV-149-FTM-UASPC, 2008 WL 11430027, at *6 (M.D. Fla. Oct. 29, 2008) (" . . . *Lucas* is still the controlling Eleventh Circuit case addressing the dismissal of a county defendant in a claim brought against a sheriff and a county pursuant to § 1983. Under *Lucas*, the sheriff and his office are officials of the county . . . "); *see also Sanguinetti v. Collier Cnty.*, No. 2:21-CV-529-JLB-KCD, 2022 WL 4305995 at *5 (M.D. Fla. Sept. 19, 2022) (Badalamenti, J.) (same). That

9

the Eleventh Circuit held in *Turquitt* that an Alabama sheriff is not a county policymaker when operating a jail does not conflict with, nor call into question, its earlier holding that a Florida sheriff acts as a county policymaker in his law enforcement functions. *See Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (where the issue was: "Whether an Alabama sheriff is a county policymaker for purposes of § 1983 liability when operating a jail."). In addition, the Eleventh Circuit has repeatedly held that Florida sheriffs are county officers in the related context of determining arm-of-state status. *See e.g., Freyre v. Chronister*, 910 F.3d 1371, 1381, 1385 (11th Cir. 2018) (stating that the Court has "repeatedly acknowledged that Florida sheriffs are, by default, county officers" and holding that the sheriff acts as a county official when performing child-protective investigations); *Stanley v. Israel*, 843 F.3d 920, 926 (11th Cir. 2016) (holding that a Florida sheriff is a county official when performing hiring and firing duties as the County's Chief Correctional Officer); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1305 (11th Cir. 2005) (holding that a Florida sheriff is a county official when enforcing county ordinance). The Eleventh Circuit's view is consistent with Florida law's characterization of sheriffs as county officials, discussed in Section I, *supra*.

The County, citing the confusion of the judge in the district court that the Eleventh Circuit reversed in *Lucas*, asserts that the law is unclear as it pertains to the status of Florida counties under § 1983. Mot. at 17. The County acknowledges that the Eleventh Circuit held in *Lucas*, *Cook*, and *Adcock* that a § 1983 suit against

a Florida sheriff is a suit against the county. *See Cook*, 402 F.3d at 1115; *Adcock*, 157 *Fed. App'x.* at 119*; Lucas*, 831 F.2d at 235. But it nonetheless claims that a conflict exists between these decisions on one hand, and a footnote in *Lundgren v. McDaniel*, 814 F.2d 600, 605 n.4 (11th Cir. 1987) (which the Defendant miscites), and an inference drawn from *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990), on the other. Mot. at 17–19. The footnote at issue in *Lundgren* stated that the Eleventh Amendment does not bar suit against the defendant sheriff because the Amendment "does not preclude an award of damages against a *county*." 814 F.2d at 605 n.4. The Court's statement equates a suit against the sheriff with a suit against the county, which is consistent with the *Lucas* line of cases, contradictory to Defendant's argument, and in line with Plaintiff's claim that the County is a proper party here.

And while the Eleventh Circuit has stated in *Brown v. Neumann*, 188 F.3d 1289, 1290-91 (11th Cir. 1999) that *Wright* implies that a sheriff's department *could* be the relevant entity under *Monell*, neither *Brown* nor *Wright* held that it was in fact the proper entity or called *Lucas* into question. In fact, the Eleventh Circuit has held, albeit in an unpublished opinion, that a sheriff's office is not a separate legal entity capable of being sued under Florida law. *D.L. by and through S.L. v. Hernando Cty. Sheriff's Office*, F. Supp. 3d, 2022 WL 3213423, at *3 (M.D. Fla. Aug. 9, 2022) (Badalamenti, J.) (citing *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013)). This reinforces *Lucas's* holding that the Sheriff represents the County for purposes of *Monell*.

In *Sanguinetti*, this Court acknowledged that a number of district courts have held that a Florida county is not a proper party in a § 1983 suit alleging unconstitutional conduct by a Florida sheriff, but it recognized that *Lucas* was still the binding precedent of the Eleventh Circuit and denied the dismissal of Collier County. 2022 WL 4305995 at *5. The Court should deny the County's motion here as well, because "while the County may not be responsible for the Sheriff's policies and practices as alleged, it may nevertheless be the appropriate party for the official capacity claims against him." *Id.* While naming both the Sheriff and the County might be redundant, it is necessary at this stage to keep both defendants to ensure the proper party is in the case and to effectuate relief. *Cf. C.P. by & through Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1098 (M.D. Fla. 2015) (denying Sheriff Rambosk's motion to dismiss § 1983 against him "[b]ecause it is plausible that either the Collier County or the sheriff as an autonomous unit may be liable . . .").[2]

### III. WHETHER THE SHERIFF OR THE COUNTY IS THE PROPER PARTY UNDER *MONELL* IS SETTLED ELEVENTH CIRCUIT PRECEDENT AND DOES NOT MEET THE DEMANDING STANDARD FOR INTERLOCUTORY APPEALS.

An interlocutory appeal is an "extraordinary measure" that should only be used in exceptional circumstances that meet the "high threshold" set by 28 U.S.C. § 1292(b). *Flaum v. Doctor's Assocs., Inc.*, No. 16-61198-CIV, 2016 WL 8677304,

---

[2] Under both Eleventh Circuit precedent and Florida law, the Sheriff's Office is not a legal entity capable of being sued. *See Faulkner*, 523 F. App'x at 701 (citing *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. Dist. Ct. App. 1995)). However, if this Court finds that the Sheriff's office, not the County, *is* the proper entity under Count III, Plaintiff respectfully seeks leave of the Court to amend his Complaint and name the Collier County Sheriff's Office as a municipal defendant in place of Collier County.

12

at *2 (S.D. Fla. Oct. 27, 2016). The question of whether the County or the Sheriff's office as an independent entity is liable for the unconstitutional policies at issue falls far short of the demanding standard of § 1292(b). The County appears to recognize as much, as its motion to dismiss does not argue that the above question meets the threshold for interlocutory appeal. Instead, it asks this Court to undertake the extraordinary measure of certifying the question for appeal because it would purportedly "assist litigants and the district courts"—words that do not appear anywhere in § 1292(b) or the law of the Eleventh Circuit.

Section 1292(b) states that a district judge, when issuing a non-appealable order, shall indicate in his opinion if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." In construing § 1292(b), the Eleventh Circuit evaluates five conditions when determining whether to consider an issue on interlocutory appeal: "(1) the issue is a pure question of law, (2) the issue is 'controlling of at least a substantial part of the case,' (3) the issue was specified by the district court in its order, (4) 'there are substantial grounds for difference of opinion' on the issue, and (5) 'resolution may well substantially reduce the amount of litigation necessary on remand.'" *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (citation omitted).

In the present case, certification for interlocutory appeal is inappropriate because the identified question of law—whether the Sheriff or the County is the

13

proper party under *Monell*—is not subject to substantial differences of opinion, does not control a substantial part of the case, and will not "materially advance the ultimate termination of the litigation," § 1292(b), or "substantially reduce the amount of litigation necessary on remand." *Mamani*, 825 F.3d at 1312.

As Plaintiff explained in Section II, *supra*, it is the settled law of the Eleventh Circuit that a § 1983 against the Sheriff in his official capacity is a suit against the County. That the Eleventh Circuit stated in a footnote that its decisions "have not been entirely consistent" on the question, *Brown*, 188 F.3d at 1290 n.2, does not erase the binding nature of *Lucas*, 831 F.2d at 235, its repeatedly affirmed and precedential case. Because there exists controlling authority in this circuit on the exact legal question at issue, there are no substantial grounds for difference of opinion. *In re Managed Care Litig.*, No. 00-1334MDMORENO, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002) (citing *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994)). The question is not controlling of a substantial part of the case, either. It merely decides whether the County, which was only named to ensure proper notice and the effectuation of relief, should remain a named defendant in one of ten counts. The Sheriff, in his official capacity, has already answered the complaint and so the *Monell* claim will be subject to discovery and further litigation.

The identified question also falls woefully short of what the Eleventh Circuit would deem likely to "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292 (b). "This is not a difficult requirement to understand.

It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin, v. Conseco Services, LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). Here, the possibility of dismissing a single defendant in a lawsuit certain to proceed (since the remaining defendants have answered) does not meet the Eleventh Circuit's high standard of avoiding a trial or substantially shortening the litigation. *Id.* at 1257 (discussing as an example of a possible interlocutory appeal "the denial of a motion to dismiss an antitrust action on statute of limitation grounds.").

The Eleventh Circuit denied interlocutory appeal of the question as to the proper defendants in *Pearson v. Kemp*, 831 F. App'x 467 (11th Cir. 2020). Plaintiffs, Presidential Electors from Georgia who sought to de-certify the 2020 Presidential Election results, sought an interlocutory appeal regarding whether county-level election officials were proper defendants in their suit. *See id.* at 469, 473. The Eleventh Circuit noted:

> a decision about whether the plaintiffs need to sue county officials will not cut short the case. If the answer is that the plaintiffs do not need to add these defendants, then the case will continue as is. If the answer is that the plaintiffs must add these defendants, the case will continue with additional defendants. We have "little doubt that a question is not controlling" if the litigation "can readily be accommodated to whatever ruling is made." 16 C. Wright & A. Miller, Federal Practice & Procedure § 3930 (3d ed. 2020).

*Id.* at 473. Just like in *Pearson*, an interlocutory appeal in this case has no bearing on whether litigation will continue. Plaintiff's state and federal law claims remain and will be proven in the same manner, whether against Collier County or Sheriff Rambosk in his official capacity. Interlocutory appeal will not "render unnecessary

a lengthy trial," *McFarlin*, 381 F.3d at 1257, because litigation will proceed after certification against either the Sheriff or the County, one of whom must be a cognizable defendant in order to preserve the integrity of § 1983.

Beyond the statutory factors under 28 U.S.C. § 1292(b), courts resist certification under 1292(b) to avoid a proliferation of piecemeal appeals. "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); s*ee also McFarlin*, 381 F.3d at 1259 ("Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy."). Further issues for interlocutory appeal may well emerge as this case progresses, exacerbating the drain on judicial resources and running counter to the limited intent of § 1292(b).

Additionally, courts prefer not to certify questions for interlocutory appeal at the motion to dismiss stage. *See, e.g., Fabricant v. Sears Roebuck & Co.*, No. 98-1281-CIV-NESBITT, 2001 WL 883303, at *2 (S.D. Fla. Jan. 29, 2001) ("interlocutory appeals of denials of a motion to dismiss are less likely to advance the ultimate termination of the litigation because the Court must assume that all the facts alleged in the complaint are true"). In cases like this one, where reversal of a lower court's motion on interlocutory appeal would not prohibit the case from going forward, "any error by this Court at this juncture along with others made in

16

the future may be corrected best by the appellate court after final judgment." *See id.*

Given that the elements of 28 U.S.C.A. § 1292 are not met, certification of this question for interlocutory appeal would be a waste of judicial resources and would unnecessarily delay the present litigation. Defendant has not demonstrated that a single prong of this statutory test has been met, asserting instead that in "law enforcement defense lawsuits, which counsel for the Defendants exclusively handles, this issue arises often." Mot. at 21. Whether the certification of this question for interlocutory appeal "will greatly assist litigants" like counsel for Defendants is irrelevant under the law and should be given no weight. Mot. at 22.[3]

## IV. COUNT X IS NECESSARY TO ENSURE PROPER RELIEF AND SHOULD NOT BE DISMISSED.

Plaintiff included a state law claim for indemnification, Count X, to ensure proper relief for Plaintiff and require Collier County to pay damages, costs, and attorney's fees resulting from the actions of its officers. *See* ECF No. 42 at 79. As discussed in Section I, the Sheriff's budget is funded by Collier County taxes, Fla. Stat. Ann. §§ 30.48 & 30.49, the sheriff may use it to purchase liability insurance, and any judgment rendered that stems from wrongdoing by a sheriff's employee will be paid either directly by the County budget or by the insurance the County funded. *See Jenne*, 825 So. 2d at 416; s*ee* § 30.555, Fla. Stat. (2000). Count X ensures the County remains informed of its financial obligations for damages in

---

[3] Collier County was made party to this litigation at Defendants' urging during the initial case management conference. ECF No. 54, 6-8.

17

case the Collier County Sheriff's Office's insurance does not cover them.

First, Plaintiff's claims properly satisfy the requirements for indemnification set by Florida Statute § 111.071, under which the County may pay judgements against public officers resulting from civil rights lawsuits and § 768.28 tort claims. Under Florida law, a county that is not a part of the Insurance Risk Management Trust Funds "is authorized to be self-insured, to enter into risk management programs, or to purchase liability insurance," as Collier County has done. Fla. Stat. Ann. § 111.072; *see also* Fla. Stat. Ann. § 768.28 (authorizing state agencies and subdivisions "to be self-insured, to enter into risk management programs, or to purchase liability insurance for whatever coverage they may choose."). Florida counties are authorized in addition to expend funds to pay judgments "arising from a complaint for damages or injury suffered as a result of any act or omission of action of any officer, employee, or agent in a civil or civil rights lawsuit . . . ." Fla. Stat. Ann. § 111.071.

Second, Defendant Officers Jean, Kirk, and Tarazona and Sheriff Rambosk are constitutional officers of Collier County under § 111.071(1)(a). Plaintiff has demonstrated extensively how the Sheriff and his deputies are indeed "officers[s], employee[s], or agent[s]" of the County. *See* section I, *supra*. In a case involving a county tax collector, the Florida Attorney General noted:

> if Manatee County is excluded from participation in the Insurance Risk Management Trust Fund, the county is authorized by this statute to compromise or settle claims or litigation against the tax collector. Thus, it is the duty and responsibility of the board of county commissioners, rather than the county officer against whom a claim

18

or litigation has been filed, to determine the appropriateness of and to pay a compromise or settlement of such litigation pursuant to s. 111.071(1)(b), F.S.

Op. Att'y Gen. Fla. 91-51 (1991). The county tax collector, like the county sheriff, is a county officer under Fla. Const. Art. VIII, Sec. 1(d). Just as it was appropriate for a county to pay a settlement stemming from acts within the scope of the office of a tax collector, so, too, is it appropriate for Collier County to indemnify Plaintiff for harms resulting from the actions of its other constitutional officers.

Count X should not be dismissed as it is necessary to ensure proper relief and Plaintiff's claims properly satisfy the requirements of § 111.071.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Collier County's motion to dismiss.

Respectfully submitted,

**ESTATE OF NICOLAS MORALES by JESSE ANDRADE**

By: /s/ Noor Tarabishy
One of Plaintiff's attorneys

Alexa Van Brunt (*Pro Hac Vice*)
Danielle Berkowsky(*Pro Hac Vice*)
Noor Tarabishy (*Pro Hac Vice*)
**MacArthur Justice Center**
160 E. Grand Ave., 6th Floor
Chicago, IL 60611
alexa.vanbrunt@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
noor.tarabishy@macarthurjustice.org
(312) 503-1336

Chris Lomax
**Lomax Legal**
95 Merrick Way, 3rd Floor
Coral Gables, FL 33134
(305) 582-6506
chris@lomaxlegal.com

Brent Probinksy
**Probinsky & Cole**
3414 Magic Oak Lane
Sarasota, FL 34232
(941) 371-8800
b.probinsky@probinskylaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, HEREBY CERTIFIES that on January 20, 2023, she electronically filed a copy of the forgoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel who have filed appearances in the case, including:

RICHARD A. GIUFFREDA, ESQUIRE
Fla. Bar No. 705233
PURDY, JOLLY, GIUFFREDA, BARRANCO JISA, P.A.
2455 E. Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone: (954) 462-3200
Facsimile: (954) 462-3861
richard@purdylaw.com
jennifer@purdylaw.com

                                                     /s/ Noor Tarabishy