UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESSE ANDRADE, as Personal
Representative of the Estate of
Nicholas Morales, deceased, and on
behalf of Nicolas Morales's minor
son N.M. Jr.,

    Plaintiff,

v.

                              Case No.: 2:22-cv-482-JLB-KCD

KEVIN RAMBOSK, PIERRE JEAN,
NATHAN KIRK, BRIAN TARAZONA,
and COLLIER COUNTY, FLORIDA,

    Defendants.
_____/

## ORDER

Before the Court is Defendant Collier County, Florida's ("Collier County") Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 50). Plaintiff filed a response. (Doc. 59). Upon careful review and accepting all well-pleaded facts in the Amended Complaint (Doc. 42) as true, the Motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND[1]

On September 17, 2020, at approximately 1:12 a.m., a resident of Immokalee,

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the Amended Complaint.

1

Florida placed an emergency call, claiming that a "Mexican" or "Mexicano" male with a shovel was banging on her door and asking to be let in. (Doc. 42 at ¶ 17). The subject of the emergency call was 37-year-old Nicolas Morales, a farm worker who lived in Immokalee and was a single father to then 12-year-old N.M. (*Id.* at ¶ 18). Mr. Morales was a Spanish speaker. (*Id.*) Mr. Morales was 5'4" and weighed approximately 149 pounds. (*Id.*)

The facts leading to that emergency call and ultimately resulting in Mr. Morales's death are alleged in the operative complaint as follows:

At about midnight, Mr. Morales woke up N.M. and told him that he was seeing spirits and creatures, and that the house was poisoned. (*Id.* at ¶ 23). Mr. Morales then left the house through a back window. (*Id.*) Three deputies—defendants Pierre Jean, Nathan Kirk, and Brian Tarazona—were dispatched to the scene of the emergency call. (*Id.* at ¶ 24). Upon arrival at the scene, Deputy Jean – a 6-foot-tall, estimated 250-pound army veteran and former football player – exited his vehicle, drew his pistol, and aimed it at Mr. Morales. (*Id.* at ¶ 30). Deputy Jean rapidly approached Mr. Morales and yelled in English, "hey don't come over here," and "get on the ground." (*Id.*) Deputy Tarazona also exited his vehicle and ran towards Mr. Morales. (*Id.* at ¶ 31). Deputy Kirk, a K-9 officer, exited his vehicle with his K-9, a German Shepherd. (*Id.* at ¶¶ 25, 31). The deputies yelled varied commands at Mr. Morales in English. (*Id.* at ¶ 33). Plaintiff alleges that the deputies had "strong reason to believe Mr. Morales might not understand English": (1) based on their "training and prior law enforcement work in the County," and (2)

"the 911 caller and dispatch both identified Mr. Morales as a Mexican and Hispanic male." (*Id.* at ¶ 34).

Mr. Morales was holding gardening tools – a shovel and shears – but never raised either at the deputies. (*Id.* at ¶ 35). Plaintiff alleges that the deputies never saw gardening shears in Mr. Morales's hands. (*Id.* at ¶ 36). When the deputies approached, Mr. Morales dropped the shovel. (*Id.* at ¶ 37).

Then, twenty-one seconds after arriving at the scene and without warning, Deputy Jean shot at Mr. Morales four times from five feet away, striking Mr. Morales with three bullets – in the shoulder, abdomen, and pelvis. (*Id.* at ¶ 40). Mr. Morales fell to the ground, crying and screaming. (*Id.*) Right after Deputy Jean shot his firearm, Deputy Kirk released the K-9 German Shepherd. (*Id.* at ¶ 42). The dog ripped through Mr. Morales's skin and tissue, and Mr. Morales thereafter vomited. (*Id.*)

Deputy Kirk approached Mr. Morales and yelled to Deputy Jean: "Don't [f**king] shoot me, you hear me?" (*Id.* at 44). Deputy Jean responded that he would put the gun away but continued pointing it at Mr. Morales. (*Id.*) Deputy Kirk removed the dog from Mr. Morales's shoulder after a minute and called for the administration of first aid. (*Id.* at ¶¶ 46–47). Deputy Tarazona went to his vehicle to retrieve a first aid kit. (*Id.* at ¶ 46). At some point after the shooting and K-9 attack, Deputy Tarazona said to Deputy Jean, "less lethal, less lethal," at which point Deputy Jean holstered his gun, pulled out a taser, and pointed it at Mr. Morales. (*Id.* at ¶ 48).

3

Deputy Tarazona then approached Mr. Morales and attempted to handcuff him. (*Id.* at ¶ 51). He yelled at Mr. Morales in Spanish to give him his hands to be handcuffed. (*Id.*) Mr. Morales responded in Spanish, conveying that he could not because his back hurt. (*Id.*) Mr. Morales was taken to Naples Community Hospital at around 2:03 a.m., approximately 40 minutes after he was shot. (*Id.* at ¶ 53). Mr. Morales was pronounced dead at the hospital at 2:15 a.m. and the Medical Examiner determined that the manner of death was a homicide. (*Id.* at ¶ 54).

Mr. Morales's death left his son an orphan. (*Id.* at ¶ 59). A video of the shooting was uploaded onto the internet about five months after Mr. Morales's death. (*Id.* at ¶ 60). No notice was given to Mr. Morales's family before the video was uploaded onto the internet. (*Id.*)

Plaintiff alleges that the deputies' conduct violated the Collier County Sheriff's Officer's ("CCSO") policies, including their use of force policies (*id.* at ¶¶ 62–71), their mental health policy (*id.* at ¶¶ 72–76), and their prohibition on false reporting (*id.* at ¶¶ 77–78). Plaintiff also alleges that CCSO's investigations into the shooting of Mr. Morales were designed to protect the deputies from accountability. (*Id.* at ¶¶ 79–116). Plaintiff further alleges that the CCSO failed to adequately screen, supervise, and retain Deputy Jean prior to the shooting. (*Id.* at ¶¶ 117–138). Finally, Plaintiff alleges that the CCSO has a pattern and custom of using unreasonable force on civilians and a custom of failed accountability. (*Id.* at ¶¶ 139–219).

The initial complaint was filed on August 10, 2022 against Collier County

4

Sheriff Kevin Rambosk, and deputies Jean, Kirk, and Tarazona. (Doc. 1). The amended complaint added Collier County as a defendant. (Doc. 42). Plaintiff seeks damages for, among other things, N.M.'s pain and suffering and Mr. Morales's medical and funeral expenses. (*Id.* at ¶¶ 220–25).

The Amended Complaint contains ten total counts, five of which are against Collier County. (*Id.* at 54–79). The claims against Collier County are as follows: *Monell* claim pursuant to 42 U.S.C. § 1983 (Count III); Wrongful Death Act Claim under Fla. Stat. Ann. § 768.16 *et seq.* (Count V); Battery State Law Claim (Survivor Action under Fla. Stat. Ann. § 46.021) (Count VII); Negligence State Law Claim (Survivor Action under Fla. Stat. Ann. § 46.021) (Count IX); and Indemnification (State Law Claim under Fla. Stat. Ann. § 111.071) (Count X).

Collier County's Motion to Dismiss (Doc. 50) asks that the Court dismiss Collier County with prejudice. (Doc. 50 at 25).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard of plausibility is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by

5

mere conclusory statements, do not suffice." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations contained in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 664. In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I.   Count III: *Monell* claim under 42 U.S.C. § 1983

Count III seeks to hold Collier County and Sheriff Rambosk liable for customs of excessive force and failed accountability, and for failure to screen Deputy Jean. (Doc. 42 at ¶¶ 250–69). It alleges that Collier County and Sheriff Rambosk "are separately liable for failing to adequately screen Jean before promoting him to deputy sheriff." (*Id.* at ¶ 259).

Section 1983 creates a cause of action against any "person" who deprives someone of their federally protected rights under color of state law. Generally, to succeed on a *Monell* claim, a plaintiff must prove "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Supreme Court has held that local government entities are "persons" under

section 1983 but "cannot be held liable . . . on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, local governments can only be held liable under section 1983 when they execute a "policy or custom" that "inflicts the injury." *Id.* at 694. Local government liability under *Monell* may be based on "(1) an express policy; (2) a widespread practice so permanent and well-settled that it constitutes a custom; or (3) an act or decision of an officer with final policy-making authority." *Boudreaux v. McArtor*, 681 F. App'x 800, 804 (11th Cir. 2017) (citing *Cuesta v. Sch. Bd.*, 285 F.3d 962, 966–68 (11th Cir. 2002)).

Collier County argues that it should be dismissed because the case "involves the Sheriff's law enforcement function as an independent constitutional officer under Florida law which function the County is not responsible [for]." (Doc. 50 at 16).

The Eleventh Circuit has "not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." *Brown v. Neumann*, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999). In *Lucas v. O'Loughlin*, 831 F.2d 232 (11th Cir. 1987), the Eleventh Circuit concluded that although a sheriff was elected by virtue of state law, "he was elected to serve the county as sheriff." *Id.* at 235. The Eleventh Circuit explained:

> In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was the act of [the] County. The trial court erred in dismissing the county as defendant.

7

*Id.* Later, in *McMillian v. Monroe County*, 520 U.S. 781 (1997), the Supreme Court held that in determining whether a sheriff is a state or county policymaker for purposes of a section 1983 action, "the question is not whether [the sheriff] acts for [the state] or [the county] in some categorical, 'all or nothing' manner," but rather whether the sheriff is acting for the state "in a particular area, or on a particular issue." *Id.* at 785.

Post-*McMillian*, the Eleventh Circuit has found that "[w]hen, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case Monroe County." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *see also Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) ("When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents—in his case, Polk County.") (citation omitted).

At this juncture, the Court does not have the information necessary to either dismiss the County from this case or to affirmatively rule that the County is a proper defendant in this matter. Accordingly, the County's motion is denied without prejudice to the County renewing these arguments at the summary judgment stage.

Collier County requests that the Court certify the decision on this issue for interlocutory appeal. (Doc. 50 at 17). Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if "such order involves a controlling

8

question of law as to which there is substantial ground for difference of opinion ***and*** [if] an immediate appeal from the order may materially advance the ultimate termination of the litigation" (emphasis added). The party seeking leave to appeal must satisfy all three elements. *See* 28 U.S.C. § 1292(b); *In re Brown*, No. 3:18-cv-415-J-34, 2018 WL 3496790, at *2 (M.D. Fla. July 20, 2018) ("The party seeking to appeal an interlocutory order must satisfy all three elements or leave to appeal must be denied.") (citation omitted). "Most interlocutory orders do not meet this test." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008). Indeed, section 1292(b) interlocutory review is a "rare exception." *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004) ("[W]hether to grant permission for an interlocutory appeal lies in the discretion of the appellate court, which in exercising its discretion should keep in mind that the great bulk of its review must be conducted after final judgment, with § 1292(b) interlocutory review being a rare exception.").

  Collier County failed to address the elements of section 1292(b). Nevertheless, the Court has considered this issue and determines that Collier County could not meet the standard set forth by section 1292(b) because dismissal of Collier County would not "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). An interlocutory appeal would materially advance the ultimate termination of the litigation where it "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Collier County is only a defendant in five of ten counts, and even within those five

9

counts, Collier County is only the sole defendant in one count, the indemnification count, which the Court dismisses via this order. *See infra*, § III; (*see also* Doc. 42 at ¶¶ 328–31). Thus, resolving this issue would not remove any counts from the Amended Complaint. Accordingly, resolution of this issue on an interlocutory basis would not serve to avoid a trial or otherwise shorten the litigation. *See, e.g.*, *Collier HMA Physician Mgmt, LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-cv-408-SPC-MRM, 2022 WL 1540396, at *4 (M.D. Fla. May 16, 2022) (denying request for interlocutory appeal where claims must go to trial regardless of an appeal and where defendant offered "no reason why [plaintiff] should wait for its claims to be adjudicated while it pursues an interlocutory appeal"); *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No 8:19-cv-1895-CE-CPT, 2021 WL 510273, at *3 (M.D. Fla. Feb. 11, 2021) (finding that an immediate appeal would not materially advance the termination of the litigation because the issue involved one count of nine and there were multiple plaintiffs and multiple defendants involved with many other claims). Because all three elements must be met for the Court to grant leave to appeal, the Court need not consider the other elements.

Accordingly, Collier County's request for the Court to certify the decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

**II.  Counts V, VII, and IX: State law vicarious liability claims.**

"Unlike federal § 1983 claims, Florida law allows a municipality to be held vicariously liable for the tortious acts of its employees." *Bowman v. Hunter*, No. 3:22-cv-545-MMH-MCR, 2023 WL 2561335, at *8 (M.D. Fla. Mar. 17, 2023) (citing

10

*Young v. Borders*, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, at *21 (M.D. Fla. Sept. 18, 2014)). Except when an employee acts "outside the course and scope of her or his employment" or "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," Florida law provides:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee.

Fla. Stat. § 768.28(9)(a).

Collier County argues that these state law claims must be dismissed because it cannot be liable for the conduct of the defendant deputies, who were appointed and employed by the CCSO. (Doc. 50 at 5 (citing Doc. 42 at ¶ 14)). In support of this claim, Collier County cites *Erickson v. Hunter*, No. 95-387-CIV-FTM-17D, 1996 WL 427769 (M.D. Fla. Apr. 10, 1996), where the court dismissed a complaint against the CCSO, finding that the sheriff "in his official capacity, *is* the [CCSO]" and thus "[i]t is redundant and unnecessary to name the Collier County Sheriff's Office in this action." *Id.* at *1 (emphasis in original). While *Erickson* indicates that the sheriff is ***a*** proper party, it does not, as Collier County suggests, claim that the sheriff is the ***only*** proper party.

Collier County does not cite a single case that would support its argument that it cannot be held vicariously liable under section 768.28(9)(a). Instead, Collier

11

County cites cases such as *Erickson*, which has a narrow holding that does not prevent a suit against Collier County.

Accordingly, Collier County's motion to dismiss Counts V, VII, and IX is denied.

### III. Count X: Indemnification

Count X of the Amended Complaint provides that "[p]ursuant to Fla. Stat. Ann. § 111.071, Florida counties are directed to pay judgments for damages for which employees are liable within the scope of their employment activities." (Doc. 42 at ¶ 329). Accordingly, the Amended Complaint alleges that Collier County is responsible for judgments entered against Deputies Jean, Kirk, and Tarazona. (*Id.* at ¶ 331).

Section 111.071 provides:

> Any county, municipality, political subdivision, or agency of the state which has been excluded from participation in the Insurance Risk Management Trust Fund *is authorized* to expend available funds to pay . . . any final judgment . . . arising from a complaint for damages or injury suffered as a result of any act or omission of action of any officer, employee, or agent in a civil or civil rights lawsuit described in [§] 111.07. . . . If the action is a civil rights action arising under 42 U.S.C. [§] 1983, or similar federal statutes, payments for the full amount of the judgment *may* be made unless the officer, employee, or agent has been determined in the final judgment to have caused the harm intentionally.

Fla. Stat. § 111.071(1)(a) (emphasis added). The statute indicates that a county is authorized to and may expend available funds to pay a final judgment, but does not require a county to do so. Based on the plain language of the statute, the Court

12

cannot find that section 111.071 requires Collier County to pay any judgments entered against Deputies Jean, Kirk, and Tarazona.

Accordingly, Collier County's Motion to Dismiss Count X is granted.

## CONCLUSION

For the reasons set forth above, Collier County's Motion to Dismiss (Doc. 50) is **GRANTED in part** and **DENIED in part**. Defendant shall file an answer to the remaining counts in Plaintiff's amended complaint (Doc. 42) within fourteen (14) days of the date of this Order.

ORDERED at Fort Myers, Florida on August 8, 2023.

*John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE